**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**CHRISTOPHER L. SATTLER,**

    **Plaintiff(s),**    **CASE NUMBER: 07-13952
                HONORABLE VICTORIA A. ROBERTS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant(s).**
_____/

## ORDER

**I. INTRODUCTION**

This matter is before the Court on the parties' cross Motions for Summary Judgment. Magistrate Judge Donald A. Scheer recommends that the Court DENY Plaintiff's motion and GRANT Defendant's motion. The Court **ADOPTS** this recommendation.

**II. PROCEDURAL HISTORY AND FACTS**

Magistrate Scheer adequately summarizes the relevant facts and procedural history. His summary is incorporated here.

**III. STANDARD OF REVIEW**

In the Social Security context, the district court reviews the decision of the Commissioner for a determination of whether the decision exceeds statutory authority or is arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). This Court must review the Administrative Law Judge's decision to determine whether it is supported by "substantial evidence." "Substantial

1

evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Secretary*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). This standard presupposes that there is a "zone of choice" within which the Administrative Law Judge ("ALJ") may make a decision without being reversed. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In other words, if the Commissioner's determination is supported by substantial evidence, it must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). The Court must only review the record that was before the ALJ and cannot review the evidence *de novo*, weigh the evidence, or make credibility determinations. *Id.*

## IV.     ARGUMENTS

There are five factors the Social Security Administration uses to determine eligibility for benefits. Plaintiff must establish that: (1) he is not presently engaged in gainful employment; (2) he suffered from a severe impairment; and (3) the impairment met or was medically equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and was of sufficient duration. If Plaintiff does not meet his burden at step three, he may still meet his burden at step four by proving he did not have the "residual functional capacity" ("RFC") to perform past work. *Jones v. Comm'r of Soc. Security*,

2

336 F.3d 469, 474 (6th Cir. 2003).

If Plaintiff satisfies his burden, the burden shifts to the Commissioner for the fifth factor to show there is other work available in the economy that the claimant can perform. 20 C.F.R. §§ 404.1520(b)-(f). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987). This substantial evidence may be in the form of Vocational Expert ("VE") testimony, but only if the hypothetical question posed to the expert accurately portrays the claimant's individual physical and mental impairments. *Id.*

### A. Plaintiff's Claims

Plaintiff Christopher L. Sattler seeks disability benefits from January 1, 2004 for gouty arthritis, knee pain, and hypertension. Plaintiff's past work experience includes employment on the oil rigs and in a pallet shop, ice cream shop, and his brother's laundry mat. He also owns a laundry mat that his wife, Arlene Sattler ("Mrs. Sattler"), currently runs. Plaintiff ran the laundry mat from 1999 to 2001.

Plaintiff claims he has gout flare-ups in his knees that cause them to swell to the point where he cannot walk. His flare-ups last about a day. Plaintiff puts ice on his knees to subside the swelling. Tr. 271.

Due to his pain, Plaintiff: (1) can only sit for 15 minutes and stand for 20 minutes; (2) must stop after walking one block; (3) cannot squat; and (4) had to give up hunting and fishing. Tr. 273-275.

Plaintiff also claims he cannot do the following because of his low intelligence: (1) read; (2) fill out a job application; or (3) write a letter. Tr. 269-270. Plaintiff says he

3

unsuccessfully tried to read through a tutor. Tr. 280.

Despite his problems, Plaintiff testified he can: (1) occasionally cook; (2) climb stairs when he has to; (3) bend over to pick up items off the floor; and (4) lift 15 pounds. Tr. 272, 274. Mrs. Sattler testified that she writes the checks, does the financial planning, cuts the grass, shops, cleans the house, and does the laundry. Tr. 284-285.

### B. Magistrate's Recommendation

To determine the range of suitable alternative jobs available for persons with Plaintiff's limitations, the ALJ asked the VE to assume an individual who can: (1) perform light work; (2) occasionally use ramps and stairs; (3) occasionally kneel, crouch or crawl; and (4) lift 20 pounds occasionally and 10 pounds frequently. The individual cannot use ladders, scaffolds, or a rope and should avoid concentrated exposure to extreme hot and cold temperatures and humidity. The VE testified that such an individual could not perform Plaintiff's past work. Tr. 289-290.

The ALJ next asked the VE to assume an individual of Plaintiff's age with the same educational background and work experience who is restricted to the above-mentioned limitations. The VE testified that such an individual could work as a night custodian (12,000 jobs in Michigan) or packer/inspector (12,000 jobs in Michigan). Tr. 290.

In a third hypothetical, the ALJ asked the VE to assume an individual who required the above-mentioned limitations in addition to a sit/stand option. The VE testified that such an individual could not perform Plaintiff's past relevant work, but could work as a packer/inspector (8,000 jobs in Michigan) or assembler (8,000 jobs in Michigan). Tr. 290-291. The VE also testified that if the ALJ found Plaintiff's testimony

4

to be fully credible, Plaintiff would be precluded from employment. Tr. 291.

The ALJ determined that Plaintiff's gouty arthritis, knee pain, and hypertension were "severe" based on the requirement in 20 C.F.R. §404.1520(c). Nonetheless, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found Plaintiff retains the RFC to perform limited light work. According to the ALJ, there are a significant number of jobs in the national economy Plaintiff can perform. Hence, he concluded that Plaintiff is not under a "disability" as defined in the Social Security Act.

The Magistrate recommends the Court uphold the decision. He says: (1) there is substantial evidence that Plaintiff retains the RFC for limited light work; (2) Plaintiff does not meet section 12.05 of the Listing of Impairments because he was not diagnosed as mentally retarded; (3) the ALJ reasonably considered Plaintiff's IQ scores, the fact that he did not require special education services, and his ability to perform semi-skilled work on a full-time basis since the age of 16 as evidence that Plaintiff did not have significant deficits in adaptive functioning prior to the age of 22; (4) the ALJ considered Plaintiff's allegations of illiteracy and reasonably found it does not cause a significant limitation on his ability to perform unskilled work; (5) given Plaintiff's semi-skilled work history as an oil rig handler and business owner/manager, the Medical-Vocational Guidelines do not mandate a finding of "disabled" even if Plaintiff was found to be illiterate; (6) the medical evidence does not support Plaintiff's allegation of totally disabling arthritic knee pain; (7) although the ALJ did not reference Plaintiff's obesity, there is no objective medical evidence suggesting his alleged obesity causes functional

limitations; and (8) the ALJ properly rejected Dr. Gene Westervelt's ("Dr. Westervelt") psychological assessment.

### C. Plaintiff's Objections

Plaintiff seeks reversal. He says the ALJ: (1) did not consider his low intelligence and illiteracy; (2) failed to consider his obesity in compliance with Social Security Ruling ("SSR") 02-01p; (3) did not comment on the effect his long work record had on the ALJ's credibility determination as required by SSR 96-7p; and (4) erred by finding his impairment did not meet section 12.05(C) of the Social Security Administration's Listing of Impairments.

Defendant did not respond.

## V. ANALYSIS

### A. Low Intelligence and Illiteracy

The ALJ considered Plaintiff's low intelligence and illiteracy. He stated, "[t]he claimant reported that he had completed the 8th grade, but could not read or write." The ALJ also reviewed Plaintiff's low IQ score and low scores on reading and spelling tests and Dr. Westervelt's conclusion that Plaintiff: (1) has limited cognitive ability; (2) operates in a range that could be considered mentally retarded (particularly for verbal skills); and (3) is unlikely to learn new skills because he cannot read or write. In addition, the ALJ examined Plaintiff's school records from Albion Public Schools.

### B. Obesity and SSR 02-01p

Plaintiff says the ALJ failed to follow the procedure for analyzing obesity as outlined in SSR 02-01p. However, Plaintiff mischaracterizes the ruling. It does not

contain a procedural mode of analysis for obese disability claimants. The ruling only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411-12 (6th Cir. Jan. 31, 2006).

The ALJ also did not err in failing to consider Plaintiff's alleged obesity. Only Dr. James C. Maher ("Dr. Maher") and Dr. Westervelt commented on Plaintiff's weight. Dr. Maher stated Plaintiff is obese and needs to "work on" his weight. Dr. Westervelt noted that Plaintiff is a "somewhat heavyset man." This minuscule amount of evidence does not prove Plaintiff's alleged obesity causes functional limitations.

**C.      Credibility Determination and SSR 96-7p**

Plaintiff does not quote the specific section in SSR 96-7p that requires the ALJ to comment on the effect his work record had on the ALJ's credibility determination. The Court assumes Plaintiff is referring to the following section:

> Assessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to:
>
> .   .   .
>
> •   Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, *prior work record and efforts to work*, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

 (Emphasis added).

The ALJ considered Plaintiff's long work history when he stated, "It is . . . noted that the claimant has worked at labor-type jobs for extended periods of time[.]" The ALJ

7

also considered the effect Plaintiff's symptoms have on his ability to work when stated: (1) "The claimant reported he worked as a carpenter and handyman and the claimant was prescribed Flexeril for his right trapezius muscle strain"; (2) "The claimant reported that he stopped working in the oil fields because of the difficulty climbing due to his gout"; and (3) "[Dr. Westervelt] concluded that it seemed that the claimant's physical illness precluded him from doing his previous work[.]"

### D. Listing 12.05(C)

Listing 12.05(C) says:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when . . . [a claimant has demonstrated a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, §12.05(C). To meet this listing Plaintiff must prove he has: (1) significantly subaverage general intellectual functioning and deficits in adaptive functioning that manifested before the age of 22; (2) a verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment that imposes an additional and significant work-related limitation of function.

Plaintiff cannot meet the first element.

Adaptive functioning includes Plaintiff's effectiveness in areas such as social skills, communication, and daily living skills. *See Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993) (citations omitted). Social functioning includes the ability to interact independently, appropriately, effectively, and on a sustained basis with other individuals.

20 C.F.R. Part 404, Subpart P, Appendix 1, §12.00(C)(2).  Daily living skills include the ability to clean, shop, cook, take public transportation, pay bills, maintain a residence, appropriately care for grooming and hygiene, use telephones and directories, and use a post office.  20 C.F.R. Part 404, Subpart P, Appendix 1, §12.00(C)(1).

The ALJ found Plaintiff had "mild limitations in activities of daily living; no limitations in social functioning; and mild limitations in concentration, persistence and pace."  Substantial evidence supports the ALJ's conclusion that Plaintiff does not have deficits in adaptive functioning.

First, Plaintiff indicates he does not have problems getting along with family, friends, neighbors, or other individuals.  For example, Plaintiff talks to others and occasionally goes out to dinner.  He also visits his parents a couple days per week.

Second, there is no evidence that Plaintiff has problems communicating.

Finally, Plaintiff can: (1) clean; (2) cook; (3) pay bills; and (4) care for his grooming and hygiene.  Plaintiff cleans the machines and the floor at the laundry mat he owns, occasionally cooks, pays the bills for the laundry, and does not require special help to take care of his personal needs and grooming.  It is also reasonable to assume Plaintiff can use a post office; he uses a post office box as his address.  In addition, Plaintiff does not need to use public transportation because he drives.

## VI.   CONCLUSION

The Court **ADOPTS** the Magistrate's Report and Recommendation.  Defendant's motion is **GRANTED**; Plaintiff's motion is **DENIED**.

**IT IS ORDERED**.

9

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: May 19, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 19, 2008.

s/Carol A. Pinegar
Deputy Clerk